*The final accounting in the Estate of* ABRAHAM VAN NEST.

THE law of 1863 gives to each executor full commissions in every estate exceeding $100,000 in value, without regard to the services rendered by them respectively.

THE SURROGATE. John Van Nest took letters testamentary on the probate of the will, has collected and disbursed the bulk of the estate, paid debts, sold real estate, and distributed to legatees. Abraham Van Nest, also nominated as executor, came in and qualified as such at a late hour, and appears to have done nothing except signing three deeds of real estate. The accounts of the executors are now passed; the estate exceeds $100,000; and the only question is one of executors' commissions.

The statute fixed certain commissions as the compensation of executors for their services, in the nature of a per centage on moneys received and paid out. If there be more than one executor, this per centage should be apportioned by the Surrogate " among them according to the services rendered by them respectively." (3 *R. S.*, 5th ed., p. 179, § 64, (58.)

The law of 1863 (*chap.* 362, § 8, *Session Laws, p.* 608) now comes in with a new and less elastic provision. If the estate amount to $100,000, and there be more than one executor, it says, that, "instead of apportioning the compensation among such executors, each shall be allowed

the full amount of compensation to which he would have been entitled if he had been sole executor."

If he had been sole executor, the whole of the estate would have passed through his hands, and he would have been entitled to full commissions on all the assets; so that the law of 1863 gives to each executor, without regard to the " services rendered by them respectively," full commissions on every estate exceeding $100,000 in value.

To prove this, let us take up the history of these several enactments on the subject.

The Revised Statutes originally made no apportionment whatever among executors, but gave them their compensation in general terms. This statute was construed by the Courts, and the actual practice prevailed of paying all executors equally, without regard to " services rendered."

By act of 1849 (*Session Laws, ch.* 160, *p.* 218), the principle of apportionment was introduced and perfected. The " services rendered" were to be calculated by the Surrogate, and the gross amount of commissions divided among the executors according to their labor and deserts. But the increase of wealth and the great responsibility of administering large estates, have now brought a new element into the question of commissions. The commissions allowed in such estates were felt by the Legislature to be paltry and inadequate. Persons of means and of business connections avoided and renounced the care of estates; and it was under such considerations that the Legislature acted when, in 1863, it determined to give full commissions to more than one executor, who should undertake an estate amounting to $100,000 and upwards. It was felt to be good policy to encourage more than one person to act, where the testator had named several in the capacity of executors. And to induce such action, full commissions were offered. It is true that this liberality may work injustice in some cases; it may have done so

in this case, where one executor has done all the work, yet finds the other paid equally with himself. But the Legislature thought the good, in even such a case, would more than overbalance the evil, because the additional compensation might secure to the estate two care-takers instead of one.

The increase of per centage upon $5,000, which was formerly only given to $10,000, is an indication of the policy which the Legislature intended to pursue in its review of this subject in 1863.

And there can be no doubt that the inflexible rule adopted was maturely considered by the Legislature, and laid down for reasons which seemed to it necessary and proper. It is my duty to allow full commissions in this estate to each executor, without reference to services performed.